IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Greenville County School District, | ) | |
| | ) | C.A. No. _____ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| C.S. and E.S. on behalf of minor child, L.S., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## **PARTIES**

1. Plaintiff Greenville County School District ("School District") is a political subdivision of the state of South Carolina that receives federal funds from the United States Department of Education to implement the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1400 *et seq*, as amended. The School District is located in and operates schools in Greenville County, South Carolina, and is within the venue of this Court.

2. Defendants C.S. and E.S. (hereinafter "Parents") are parents of L.S. At all times relevant to this matter, L.S. has attended schools of the School District. L.S. is a student with a disability under the IDEA, and his educational program is subject to the provisions of the IDEA.

3. Parents originally sought, and on November 13, 14, and 15, 2019, were provided a due process administrative hearing under the IDEA, and then sought and were provided State-level review of the Local-Level Hearing Officer's ("LHO") decision, with a subsequent decision by the State-Level Review Officer ("SRO") issued on January 1, 2020. On information and belief, Parents reside in Greenville County, South Carolina, and are within the venue of this Court.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to the IDEA, 20 U.S.C. §1415(i)(2) and (3)(A) as well as 34 C.F.R. § 300.514 and S.C. Code Regs § 43.243(V)(17). The parties have exhausted all available administrative remedies under the IDEA and State law. School District appeals to this Court from the due process decision of the SRO dated January 1, 2020, and rendered under 20 U.S.C. § 1415(g) and 34 C.F.R. § 300.514 of the IDEA.

## FACTUAL ALLEGATIONS

5. L.S. is a student with an IDEA disability currently attending kindergarten at Sara Collins Elementary School ("SCES") in the School District.

6. Upon information and belief, L.S. is zoned to attend Plain Elementary School ("PES") based on his residence.

7. L.S. is served by the School District under the IDEA as a student whose primary disability is Deafblindness, but also other health impairment, and orthopedic impairment.

8. L.S. has a medical diagnosis of CHARGE Syndrome, and he is nonverbal and communicates using American Sign Language ("ASL").

9. L.S. first transferred into the School District in the spring of 2018 from North Carolina when he was 3 years of age.

10. Upon the transfer of L.S. into the School District, the School District provided comparable services under IDEA and reviewed available records from Parents and his previous school district. For the weeks remaining in the 2017-2018 school year, L.S. was served in a special education preschool program.

11. During the summer of 2018, the Parents and School District participated in multiple Individualized Education Plan (IEP) meetings to develop L.S.'s IEP for the upcoming 2018-2019 school year. The School District issued prior written notices (PWNs) following these IEP meetings.

12. Pursuant to the IEP developed for the 2018-2019 school year ("2018-2019 IEP"), L.S. was served in a 4-year-old kindergarten/Child Development classroom, which is a non-compulsory program that provides admission priority to students determined to be at-risk in some way; however, the Child Development program is not itself a special education program.

13. The 2018-2019 IEP, provided for L.S. to receive four hours per day of special education instruction from a special education teacher of the deaf and hard of hearing ("DHH teacher") in the regular education Child Development classroom at the same time general education instruction occurs in the classroom.  Additionally, the 2018-2019 IEP provided for services by an "intervener" using ASL throughout the day to help address safety, promote socialization, and assist with communication needs.  Finally, the 2018-2019 IEP provided for direct speech/language therapy, occupational therapy, physical therapy, indirect support from a vision teacher, accommodations, and special transportation.

14. L.S. attended Greenbrier Elementary School ("GES") during the 2018-2019 school year, although he was not zoned to attend school at GES.  PES had no Child Development program.

15. L.S. made progress toward his goals during the 2018-2019 school year, but his limited knowledge and use of ASL yielded a significant language gap as compared to general education students.

16. The IEP team met to complete an annual review of L.S.'s IEP for the 2019-2020 school year to discuss and plan transition to 5-year-old kindergarten on May 23, June 6, June 7, July 10, July 31, and August 12, 2019.  The Parents attended and participated in these IEP meetings, accompanied by advocates and other professionals who presented information to the IEP team.

17. The IEP team developed an IEP for 2019-2020 ("2019-2020 IEP") that provided for special education instruction in a DHH special education classroom receiving instruction

3

from a DHH teacher for 180 minutes of his day, with the remainder of time in the general education setting, physical therapy, and occupational therapy. L.S. would also receive indirect vision services, intervener services throughout the day, accommodations, modifications, and special transportation.  The IEP set out goals focusing on addressing deficits, communication/development of language and social-emotional skills.

18. L.S. was assigned to attend SCES, because SCES was the elementary school that housed the DHH special education program in which the IEP could be implemented.

19. Following the completion of the 2019-2020 IEP, the School District issued a PWN to the Parents on August 16, 2019, setting out the School District's proposals and refusals, the reasons for such proposals or refusals, options considered by the IEP team, the information considered by the IEP team in making the decisions described in the PWN, and information for the Parents regarding where they may obtain assistance in understanding their rights under IDEA.

20. The first day of school in the School District was August 20, 2019.  The School District received the Parents' IDEA due process hearing request on the evening of August 19, 2019.

21. Following the Parents' submission of their due process hearing request, the School District provided services set out in the 2018-2019 IEP at SCES, consistent with stay-put requirements under the IDEA and an Order Regarding Petitioner's (Parents') Motion to Determine Stay-Put Placement, dated September 23, 2019, by the Local-Level Hearing Officer ("LHO").

## PROCEDURAL HISTORY

22. On August 19, 2019, the Parents initiated a due process action seeking a determination that L.S. was denied a free appropriate public education (FAPE), asserting that the School District had predetermined L.S.'s 2019-2020 placement in the DHH special education

4

classroom at SCES and did not allow them meaningful participation; that the School District was placing L.S. in the DHH classroom at SCES in contravention of least restrictive environment (LRE) requirements under the IDEA; that this placement was improper and made by people not sufficiently knowledgeable about L.S.'s disability; and that L.S. was entitled to attend the school for which he is zoned.

23. On September 19, 2019, the Parents filed a Motion for Local Level Hearing Officer to Determine Educational Placement for Purposes of Stay-Put Right arguing that L.S.'s 2018-2019 IEP originally implemented at GES should be implemented at GES or PES, but not at SCES. Following the submission of memoranda of law by both parties, the LHO issued his Order Regarding Petitioner's (Parents') Motion to Determine Stay-Put Placement declaring that stay-put was the 2018-2019 IEP and, stay-put could properly be and should be implemented at SCES where L.S. was assigned.

24. The LHO conducted a due process hearing on November 13, 14, and 15, and issued a decision dated November 21, 2019, finding that the School District did provide L.S. a free appropriate public education in the least restrictive environment, that the School District did not predetermine the IEP placement decision, that the School District allowed the Parents meaningful opportunity to participate in the IEP process, and upholding the 2019-2020 IEP and placement.

25. The LHO denied the Parents' request for relief.

26. In a notice of appeal dated December 2, 2019, the Parents initiated an appeal of the LHO's decision to the State Department of Education's SRO.

27. In a decision dated January 1, 2020, the SRO upheld the LHO's determination that the School District had not predetermined the placement in SCES's DHH special education classroom. The SRO also did not determine that L.S. must be educated at PES. Finally, the SRO found that the Parents did not appropriately raise implementation issues or issues regarding

the quality of services for the 2018-2019 IEP, but that the School District provided meaningful progress by way of the 2018-2019 school year. However, the SRO determined that the School District failed to provide a FAPE in the LRE by way of the 2019-2020 IEP. Additionally, she determined that the School District improperly implemented the Stay-Put placement because the School District utilized more than one DHH teacher to provide the special education instruction in the general education setting required by the 2018-2019 IEP.

28. The SRO ordered that the School District provide the following relief:

  a. an IEP that reduces the time in a separate special setting by at least 50% and also provides DHH services within the regular education setting;

  b. the IEP must support the student in accessing the kindergarten curriculum;

  c. the DHH teacher and classroom teacher must plan together to allow for access to the kindergarten curriculum;

  d. the School District may provide placement at SCES, but must provide direct transportation that does not rely on the Parents, and a trained nurse must be available;

  e. the School District must reimburse the Parents for mileage costs incurred in transporting the student to SCES from the time the student started at SCES for the 2019-2020 school year;

  f. compensatory education hours for harms the SRO attributed to improper implementation of the Stay-Put placement by providing additional instruction amounting to 20% of special education hours;

  g. if further action is pursued in this matter, special education instruction in Stay-Put must be provided by one teacher;

  h. the School District must ensure progress while in a Stay-Put placement;

  i. the School District must complete a full psychoeducational evaluation at the end

this school year as part of the planning for next school year, and this reevaluation must be conducted by experts with experience with children with CHARGE Syndrome.

29. The School District is aggrieved by the decision of SRO that L.S. was not provided FAPE in the LRE and that the School District improperly implemented the stay-put placement, and thereby must provide compensatory education hours.

30. The administrative record does not contain substantial evidence to support the findings and decisions of the SRO, and they are contradicted by existing legal precedent.

31. The SRO's decision contains palpable errors of fact and law, including but not limited to the following:

a) it runs afoul of the burden of proof required under the IDEA and improperly shifts the burden to the School District;

b) it improperly applies legal standards for compensatory education;

c) it improperly applies legal standards for LRE;

d) it improperly applies legal standards for FAPE;

e) it improperly applies legal standards for stay-put;

f) it fails to provide appropriate deference to the LHO, who was in a position to observe the testimony and demeanor of the witnesses, including School District personnel involved in the decision-making process, and the Parents' expert witnesses, and assess their credibility;

g) it fails to provide appropriate deference to trained and certified educators who testified in the hearing;

h) it fails to provide appropriate deference to trained and certified educators who participated in the IEP meetings that developed the 2019-2020 IEP;

i) it improperly found contrary to the evidence in the record that L.S must be taught by

one teacher to implement FAPE.

j) it places improper weight on the testimony of a witness who failed to testify truthfully during the hearing according to the Parents;

k) it places improper weight on the testimony of the Parents' expert witnesses;

l) it arbitrarily and without basis reduces L.S.'s special education instruction;

## CLAIM FOR RELIEF

32. School District appeals the January 1, 2020, decision of the SRO which determined that the School District failed to provide L.S. a FAPE in the LRE, and seeks a declaration that the School District offered L.S. a FAPE and that L.S. received a FAPE during the relevant time period.

## PRAYER FOR RELIEF

33. Wherefore, School District respectfully pray the following:

   a. that this Court take Jurisdiction of this matter;

   b. that, pursuant to the IDEA and applicable case law, this Court review the evidence contained in the administrative record to make an independent decision based on the preponderance of the evidence;

   c. that this Court render a decision finding the following:

      i. the School District offered IEPs for the 2018-2019 and 2019-2020 school years that were reasonably designed to offer meaningful educational benefit in light of L.S.'s circumstances and provided for FAPE in the LRE appropriate for L.S.;

      ii. the School District offered the Parents opportunity to participate meaningfully in the development of the IEP and did not predetermine L.S.'s placement in the DHH special education classroom at SCES;

      iii. the School District did not improperly implement the stay-put placement

and the School District is not required to provide compensatory education to L.S.;

iv. in the alternative, if the School District is required to provide compensatory education, the SRO's order does not properly apply legal precedent in calculating the amount of compensatory education to which L.S. would be entitled;

v. the School District was not required to reevaluate L.S. prior to proposing the DHH special education classroom placement at SCE, and the SRO's order arbitrarily requires the School District to conduct a reevaluation; and

vi. and providing such other equitable relief as this Court might find appropriate.

        Respectfully submitted,

        HALLIGAN MAHONEY WILLIAMS SMITH
        FAWLEY & REAGLE, PA


        By: s/ Kimberly Kelley Blackburn
        Kimberly Kelley Blackburn, Fed. I.D. No. 10771
        kblackburn@hmwlegal.com

        Susan M. Fittipaldi, Fed. I.D. No. 7087
        sfittipaldi@hmwlegal.com

        P.O. Box 11367
        Columbia, South Carolina 29211
        (803) 254-4035

        R. Douglas Webb, Fed. I.D. No. 11491
        General Counsel
        Greenville County School District
        P.O. Box 2848
        Greenville, SC  29602

        Attorneys for Plaintiff

March 10, 2020

Columbia, South Carolina

10